IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 0 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| DANIEL CURIEL-SANCHEZ )<br>)<br>Petitioner, )<br>)<br>-VS- )<br>)<br>United States of America, )<br>)<br>Respondent. ) | CASE NO. 1:00CR00106-001<br><br>B-01-006? |

## BRIEF IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 USC § 2255

**COMES NOW**, the petitioner, DANIEL CURIEL-SANCHEZ, acting in pro se, and moves this court to vacate, set aside or correct the sentence imposed upon him pursuant to 28 USC § 2255. In support thereof, the petitioner submits the following.

### JURISDICTION

Pursuant to Title 28 USC § 2255, [a] prisoner in custody under sentence of a court established by the Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or Laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. A motion for such relief may be made pursuant to the Federal Rules of Criminal Procedure, Section 2255.

## STATEMENT OF THE CASE

On March 14, 2000, a federal grand jury in Brownsville, Texas filed a single-count indictment against Daniel Javier Curiel-Sanchez charging as follows: Count I: Alien unlawfully found in the United States after deportation in violation of 8 USC §§ 1326(a) and 1326(b).

On April 25, 2000, Sanchez appeared before U.S. Magistrate Judge Felix Recio and entered a plea of guilty to the charge. There was a written rule 11(e)(1)(B) plea agreement in which the government recommends that Mr. Sanchez receive full credit for acceptance of responsibility and a sentence at the bottom of the guideline range.

## STATEMENT OF THE FACTS

On November 12, 1991, Curiel-Sanchez was convicted for felon in possession of a firearm by the U.S. District Court in Brownsville, Texas under Docket No. 1:91CR00178-001. He was sentenced to twelve months imprisonment followed by a term of 3 years supervised release. On December 14, 1992, the defendant was deprted from the United States through the Port of Entry in Laredo, Texas.

On May 25, 1994, Curiel-Sanchez was revoked from supervised release and sentenced to an additional four (4) months of imprisonment. This conviction is an aggravated felony as described in 8 USC § 1101(a)(43).

On September 1, 1999, Curiel-Sanchez was deported from the United States a second time after a subsequent conviction for false representation as a United States citizen, in violation of 18 USC § 911.

On February 16, 2000, an officer with the Brownsville, Texas Police Department entered the U.S. Border Patrol Station with Curiel-Sanchez in his custody. Mr. Curiel-Sanchez was interviewed by the Brownsville Police Department in relation to a drug case, During the interview with the officer, the defendant admitted to being a citizen of mexico who had unlawfully entered the United States.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I. PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS PRIOR TO AND DURING SENTENCING HEARINGS.

II. WHETHER PETITIONER QUALIFIES FOR A DOWNWARD DEPARTURE BASED ON A STIPULATION TO DEPORTATION.

**ARGUMENTS AND POINTS OF AUTHORITIES**
**ISSUE NO. I**

I. PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN DIRECT VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHTS PRIOR TO AND DURING THE PETITIONER'S SENTENCING HEARING.

Petitioner was denied effective assistance of counsel as guaranteed in the Sixth Amendment to the Constitution; see Sixth Amendment and **Strickland v Washington**, 466 US 668 (1984). In Strickland the Supreme Court held that in order to establish a constitutional violation of the right to effective assistance of counsel, a petitioner must meet two prongs. First, he must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment. This prong is met by showing that counsel's acts and omissions did not meet an objective standard of reasonableness. See **United States v Smith**, 915 F 2d 959 (5th Cir. 1990)(quoting Strickland, 466 US at 668, 104 S.Ct. at 2064). Second, a petitioner must show that he was prejudiced by counsel's performance. This second prong of the test is met by showing the existence of a reasonable probability that, but for counsel's deficient performance, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome, **Strickland**, 104 S.Ct. at 2068.

It is submitted that based on the arguments as set forth within the pleading, the standards of Strickland are sufficiently met.

The requirement that a defendant receive effective assistance

-3-

of counsel in constitutionally mandated. U.S. Constitution, Amendment VI; **Reece v Georgia,** 350 US 85, 90 (1955)(the effective assistance of counsel...is a constitutional requirement of due process of law) and **Mc Cann v Richardson**, 397 US 759, 771, N. 14 (1970)(the right to counsel is the right to effective assistance of counsel).

### LOSS OF EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

We submit petitioner's claim of ineffective assistance of counsel in this instance is governed by **Penson v Ohio**, 488 US 75, 88, 109 S.Ct. 346, 354, 102 L Ed 2d 300 (1988), in which it was held that a petitioner need not prove the prejudicial prong of **Strickland** when acts or omissions of counsel resulted in the actual or constructive denial of assistance of counsel altogether.

In the context of the loss of effective assistance of counsel, petitioner submits that prejudice occurs where a defendant is denied effective assistance of counsel during the sentencing phase as in petitioner's case.

Counsel failed to argue to the trial court the application of a downward departure for a stipulation to deportation. Counsel's deficient performance served to relieve the government of persuading the court to adopt the PSR in toto, thus depriving petitioner of his due process in violation of his Fifth and Sixth Amendment rights under the Constitution of the United States. Further, petitioner was deprived of effective assistance of counsel where counsel failed to bring these matters in his objections to the PSR in its proper argumental form. It is clear from the record that counsel did not file objections to the PSR with respect to the stipulation of deportation or investigate the proper application of

-4-

same making counsel's performance substandard; see **Strickland**, supra at 692.

Petitioner can demonstrate that counsel's failure to make a pre-trial investigation and to file an addendum to the PSR before sentencing amounted to ineffective assistance of counsel. Counsel was under a duty to fully investigate the case; see **Woodward v Collins**, 898 F 2d 1027 (5th Cir. 1990), in which the court found that "no" such presumption [of reasonable professional conduct] is warranted when a lawyer advises his client to plea bargain to an offense which the attorney has not fully investigated. Such conduct is always unreasonable, Id. at 1029 (emphasis added). Before urging the defendant to accept his sentence and where the defendant has an opportunity to address the court with his right to allocution, counsel failed to properly investigate the applications of a downward departure regarding the stipulation to deportation.

With proper investigation, counsel would have been able to raise these claims and advise petitioner so that during his due process protections afforded petitioner under the allocation requirements pursuant to Federal Rules of Criminal Procedure, Rule 32(a).

Petitioner could have perfected the record and thus avoided a procedural bar, or in the alternative, brought the issue of deportation to the trial court's attention.

Petitioner raises the claim of ineffective assistance of counsel so that government will not argue the procedural barred defense under **United States v Frady**, 456 US 152, 168 S.Ct. 1584, 1594-95, 71 L Ed 2d 816 (1982). Petitioner is well aware that all claims are considered waived after final judgment. However, petitioner can demonstrate to the court **cause**; ineffective assistance of counsel,

-5-

and prejudice; but for counsel's errors, the outcome would have been different, **Strickland supra**, and the petitioner's term of imprisonment would not have been the 57 months he is presently serving.

In determining ineffective assistance of counsel, we see that in **Green v Johnson**, 116 F 3d 1115 (5th Cir. 1997), the court is instructed to first analyze whether an attorney's performance fell below an objective standard of reasonableness, **Green**, supra at 1121-1122. This objective standard is defined by the prevailing norms of our legal profession, see **Strickland**, supra at 668.

Petitioner submits that cases such as **Holloway v Arkansas** and **United States v MAria Martinez** affirmatively suggest that an attorney who does not speak on behalf of his client entirely fails to meet the prevailing professional norms of our legal community, see **Holloway v Arkansas**, 435 US 475, 490 (1978)(stating "the mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters"), see also **United States v Maria Martinez**, 143 F 3d 914, 916 (5th Cir. 1998) citing **Holloway**.

Petitioner does not venture to guess why counsel of record chose to neglect his client's interest at sentencing. It may very well have nothing to do with a conflict of interest. However, the principle of **Holloway** remains the same. Why a lawyer might choose to stand silent is not the point, The silence is the point. The Constitutional violation abides in the "sealed...lips," regardless of what counsel's motivation might be, **Holloway**, supra at 490.

While the record clearly demonstrates counsel's inadequate performance, the subsequent point of error II in this brief reveal the prejudicial effects of counsel's deficient counseling.

-6-

Because counsel chose not to advocate, the government, for all intent and purposes, was allowed to establish its case without impediment or obstruction. The denial of adversarial testing granted petitioner the unmistakable prejudice of a two-level decrease in his total offense level.

Petitioner was affirmatively denied his right to the effective assistance of counsel. Such a constitutional violation can be reconciled only through a complete reversal of petitioner's sentence in conjunction with a remand so as to proceed with a proper sentencing hearing.

## ARGUMENT AND POINTS OF AUTHORITIES
## ISSUE NO. II

II.   WHETHER THE PETITIONER QUALIFIES FOR A DOWNWARD
      DEPARTURE BASED ON A STIPULATION TO DEPORTATION.

In the case at bar, petitioner has offered to stipulate to a judicial order of deportation (authorized under 8 USC § 1252(a)(d)(1), now 8 USC § 1252(a)(c)(1).

In **Koon v United States**, 518 US 81, 116 S.Ct. 2035, 135 L Ed 2d 392 (1996), the Supreme Court held that factors that are not mentioned in the U.S. Sentencing Guidelines may be used as grounds for a downward departure when they "take the case out of the Guidelines heartland." Koon, supra at 96.

In this case, a downward departure is warranted becasue the Sentencing Commission failed to consider that petitioner's immigration status would increase the severity of his sentence and has not proscribed this basis as a ground for downward departure.

-7-

In **United States v Cubillos**, 91 F 3d 1342 (9th Cir. 1996), the Ninth Circuit recognized that a downward departure intended to obviate the disparity in sentencing that may arise between "deportable aliens" and other defendants may be appropriate in certain cases, **Cubillos**, supra at 1342. As the Court of Appeals discussed in **Cubillos**, this disparity is evidenced in the type of prison or custodial facility that is available to an inmate who is a "deportable alien" as opposed to an inmate who is a U.S. citizen, **Id**.

Specifically, the Sentencing Reform act gives the Bureau of Prisons (BOP) the responsibility to "designate the place of the prisoner's imprisonment," 18 USC § 3621(b). The BOP "may designate any available penal or correctional facility ... that the Bureau determines to be appropriate and suitable" in light of, among other factors, "the history and characteristics of the prisoner," **Id**.; see also **Cubillos**, supra at 1344.

In **Cubillos**, the Court of Appeals noted that the Bureau of Prisons considers an inmate's "deportable alien" status to be a Public Safety Factor (PSF) that requires heightened safety measures, **Id**. at 1344. Thus, absent a waiver of this PSF, an inmate who is a "deportable alien" cannot be housed in a minimum security facility or a community corrections center for any portion of his or her sentence, **Id**.; see also Federal Bureau of Prisons Program Statement 5100.04 - Security Designation and Custody Classification Manual, Ch. 2-6(H) ( June 16, 1994). A waiver, in turn, is available only if the inmate can demonstrate the following:

1. verified strong family/community ties in the U.S.;
2. verified history of domicile (five years or more) in the United States; and/or

-8-

3. verified history of stable employment in the U.S.

Many individuals who are "deportable aliens" are not in a position to demonstrate, at minimum, a verified history of domicile and/or stable employment in the United States. Thus, for inmates like Lopez, prosecuted for non-violent, status offense, who otherwise would be eligible for placement in a low security facility or to spend the last portion of their sentence in a community confinement center. the PSF increases the severity of their sentence.

Similarly, 18 USC § 3624(c) establishes a system in which prisoners may be integrated back into society slowly. Section 3624(c) states as follows:

> (c) **Pre-release Custody** - The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation system shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

When the average prisoner, who is a citizen of the United States, reaches the last ten percent of his or her sentence, he or she may serve the last six months in a Community Corrections Center (CCC). The warden of the institution where the inmate is housed has the discretion to place an inmate in this program, **Id.** Once the inmate has been placed in the CCC, the authorities at the CCC may recommend that the inmate be placed in home confinement for a portion of the remaining sentence, **Id.** Consequently, if an inmate is eligible for this pre-release program, the last six months of

-9-

his or her sentence may be less severe than the sentence that was served in custody.

In **Cubillos**, the Ninth Circuit considered this disparity in concluding it may provide a basis for a downward departure, see also **United States v Smith**, 27 F 3d 649 (D.C. Cir. 1994). The court remanded the case to the district court for a "refined assesmsment of the many facts bearing on the outcome," Cubillos, at 1344.

Due to his conviction in this case and his lack of U.S. citizenship, petitioner will have a detainer placed on him by the INS for deportation from this country once he has completed serving his sentence. As such, petitioner is and will continue to be deemed a "deportable alien". Moreover, he will surely be unable to obtain the PSFwaiver.

Consequently, petitioner will very likely be precluded from designation in a minimum security facility and/or participation in the BOP's pre-release program. Thus, he will not be eligible for placement in a CCC when he reaches the final six months or 10 percent of his sentence. This result will have a substantial effect on his entire sentence because it will dictate the restrictiveness of the environment which petitioner will have to live and function for the entire duration of his sentence.

Because the Sentencing Commission did not consider this unjust result when it formulated the guidelines, a downward departure is warranted.

## AUTHORITY TO DEPART

When a proposed ground for departure is unaddressed by the Guidelines, a court must look to "the 'structure and theory of both

relevant individual guidelines and the Guidelines taken as a whole.'" Koon, 518 US at 96 (quoting United States v Rivera, 994 F 2d at 949); United States v Sablan, 114 F 3d 913, 917 (9th Cir. 1997)(en banc); United States v Cubillos, 91 F 3d 1342, 1345 (9th Cir. 1996). If a departure is consistent with the Guideline's structure and theory, it is permissible.

The most fundamental purpose of the Sentencing Reform Act and its Sentencing Guidelines system is to eliminate disparity in sentencing, In summing up its criticism of the then-exisiting system and the reasons for the new system, the Senate Judiciary Committee explained:

> The shameful disparity in criminal sentences is a major flaw in the existing criminal justice system and makes it clear that the system is ripe for reform. Correcting our arbitrary and capricious method of sentencing will not be panacea for all of the problems which confront the administration of criminal justice, but it will constitute a significant step forward.

Senate Rep. No. 225, 98th Cong., 1st Sess. 65 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3248 (emphasis added).

## CONCLUSION

Based on the foregoing, petitioner prays that this Honorable Court consider his request for downward departure pursuant to a stipulation of deportation.

Dated 1-5-01

Respectfully Submitted,

X Daniel Curiel Sanchez

Daniel Curiel-Sanchez
#58369-079
FCI Three Rivers
P.O.B. 4200
Three Rivers, Texas 78071

-11-